UNITED STATES *v.* EIGHT THOUSAND EIGHT
HUNDRED AND FIFTY DOLLARS ($8,850)
IN UNITED STATES CURRENCY

No. 81–1062.   Argued January 18, 1983—Decided May 23, 1983

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 570.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Jensen, Carter G. Phillips, John Fichter De Pue,* and *David B. Smith.*

*Victor Sherman* argued the cause for claimant Vasquez. With him on the brief was *Paul L. Gabbert.*

JUSTICE O'CONNOR delivered the opinion of the Court.

United States Customs officials seized $8,850 in currency from the claimant as she passed through customs at Los Angeles International Airport. The question in this case is whether the Government's 18-month delay in filing a civil proceeding for forfeiture of the currency violates the claimant's right to due process of law. We conclude that the four-factor balancing test of *Barker* v. *Wingo,* 407 U. S. 514 (1972), provides the relevant framework for determining whether the delay in filing a forfeiture action was reasonable. Applying the *Barker* test to the circumstances of this case, we find no unreasonable delay.

I

A

Section 231 of the Bank Secrecy Act of 1970, 84 Stat. 1122, 31 U. S. C. § 1101, requires persons knowingly transporting monetary instruments exceeding $5,000 into the United States to file a report with the Customs Service declaring the amount being transported. Congress has authorized the Government to seize and forfeit any monetary instruments for which a required report was not filed. 31 U. S. C. § 1102(a). Since the Bank Secrecy Act does not specify the procedures to be followed in seizing monetary instruments, the Customs Service generally follows the procedures governing forfeitures for violations of the customs laws, as set forth in 19 U. S. C. § 1602 *et seq.* (1976 ed. and Supp. V), and the implementing regulations. Under these procedures, the Customs Service notifies any person who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture.[1] See 19 CFR § 162.31(a) (1982). The regulations require a claimant to file the petition within 60 days. 19 CFR § 171.12(b) (1982).

If the claimant does not file a petition, or if the decision on a petition makes legal proceedings appear necessary,[2] the appropriate customs officer must prepare a full report of the

---

[1] In addition to the general remission provisions of Title IV, Title II of the Bank Secrecy Act contains its own remission provision, 31 U. S. C. § 1104: "The Secretary may in his discretion remit any forfeiture or penalty under this subchapter in whole or in part upon such terms and conditions as he deems reasonable and just."·

[2] At the time of the seizure in this case, a customs officer could institute nonjudicial, summary forfeiture proceedings if the value of the seized merchandise was not more than $2,500. See 19 U. S. C. §§ 1607–1609. Congress has since raised this limit to $10,000. 19 U. S. C. § 1607 (1976 ed., Supp. V). Even for a seizure of property appraised at less than $10,000, the claimant has a right to a judicial determination upon posting a $250 bond to cover costs. 19 U. S. C. § 1608.

seizure for the United States Attorney. 19 U. S. C. § 1603 (1976 ed., Supp. V).[3] Upon receipt of a report, the United States Attorney is required "immediately to inquire into the facts" and, if it appears probable that a forfeiture has been incurred, "forthwith to cause the proper proceedings to be commenced and prosecuted, without delay." 19 U. S. C. § 1604 (1976 ed., Supp. V). After a case is reported to the United States Attorney for institution of legal proceedings, no administrative action may be taken on any petition for remission or mitigation. 19 CFR § 171.2(a) (1982).

The Customs Service processes over 50,000 noncontraband forfeitures per year. U. S. Customs Service, Customs U. S. A. 36 (1982). In 90% of all seizures, the claimant files an administrative petition for remission or mitigation. Brief for United States 7. The Secretary in turn grants at least partial relief for an estimated 75% of the petitions. *Ibid.* Typically, this relief terminates the dispute without the filing of a forfeiture action in district court.

## B

On September 10, 1975, claimant Mary Josephine Vasquez and a companion arrived at Los Angeles International Airport after a short visit to Canada. During customs processing, Vasquez declared that she was not carrying more than $5,000 in currency. Nevertheless, a customs inspector discovered and seized $8,850 in United States currency from her. On September 18, 1975, the Customs Service officially informed Vasquez by letter that the seized currency was subject to forfeiture and that she had the right to petition for re-

---

[3] At the time of the seizure of the currency from Vasquez, 19 U. S. C. § 1603 contained no requirement of a prompt report of a seizure by the Customs Service to the United States Attorney for purposes of instituting forfeiture proceedings. As amended in 1978, § 1603 now requires the appropriate customs officer "to report promptly" to the United States Attorney whenever legal proceedings "in connection with such seizure or discovery are required." 19 U. S. C. § 1603 (1976 ed., Supp. V).

mission or mitigation. A week later, Vasquez filed a petition for remission or mitigation,[4] asserting that the violation was unintentional because she had mistakenly believed she was required to declare only funds that had been obtained in another country and that she had brought the seized funds with her from the United States.

On October 20, 1975, the Customs Office of Investigation assigned Special Agent Pompeo to investigate the petition. Within a few days, Agent Pompeo had interviewed the customs inspectors at the airport who were involved in the seizure. After several unsuccessful attempts to contact him, in mid-November Agent Pompeo contacted Vasquez' attorney to arrange an interview with Vasquez. The attorney was unable to meet at that time, and he desired to be present during the interview with his client. Around this time, Agent Pompeo also opened a criminal file because she suspected Vasquez of smuggling drugs. From November 1975 until April 1976, Agent Pompeo contacted various state, federal, and Canadian law enforcement officials to determine whether the seized currency was part of a narcotics transaction.[5]

In January 1976, Vasquez' attorney inquired about the status of the petition, and was informed it was still under investigation. On March 2, 1976, Agent Pompeo again contacted the attorney regarding an interview with Vasquez, and an interview took place three days later. On April 26, 1976, the attorney again inquired about the status of the petition and requested that it be acted on as soon as possible. Also in April 1976, Agent Pompeo received final reports from the law enforcement agencies. From these reports, Agent

---

[4] On September 11, 1975, the day after the seizure, Vasquez' counsel had written an informal letter to the District Director of Customs, explaining why she had not declared the money.

[5] This inquiry was relevant to the reporting violation. A currency reporting violation is normally a misdemeanor, but a reporting violation committed in furtherance of any other federal offense is a felony. Compare 31 U. S. C. § 1058 with 31 U. S. C. § 1059.

Pompeo concluded there was no evidence to support a charge of narcotics violations.

In May 1976, Agent Pompeo submitted a report to the United States Attorney, recommending prosecution of Vasquez for the reporting violation. After Agent Pompeo reinterviewed the customs agents and reported her findings, the United States Attorney submitted the case to the grand jury. On June 15, 1976, a grand jury returned an indictment charging Vasquez with the felony of knowingly and willfully making false statements to a United States Customs officer, in violation of 18 U. S. C. § 1001; and with the misdemeanor of knowingly and willfully transporting $8,850 into the United States without filing a report, in violation of 31 U. S. C. §§ 1058 and 1101. The indictment sought forfeiture of the currency as part of the misdemeanor count.

In August 1976, Agent Pompeo recommended that disposition of the remission petition be withheld until the currency was no longer needed as evidence at the criminal trial. On December 24, 1976, Vasquez was convicted on the felony count but acquitted on the misdemeanor charge of willfully failing to file a currency report.[6] Four days after the criminal trial was completed, Vasquez' attorney again inquired whether there would be any further delay in acting on the petition.

On March 10, 1977, the Customs Service informed Vasquez that the claim of forfeiture had been referred to the United States Attorney. Within two weeks, a complaint seeking forfeiture under 31 U. S. C. § 1102 was filed in Federal District Court.[7] In answer to the complaint, Vasquez admitted the factual allegations but asserted as one of several affirma-

---

[6] The conviction on the felony count was subsequently reversed because court files were left in the jury room during deliberations. *United States* v. *Vasquez*, 597 F. 2d 192 (CA9 1979).

[7] On March 28, 1977, the Customs Service officially notified Vasquez that her petition had been denied.

tive defenses that the Government's "dilatory processing" of her petition for remission or mitigation and "dilatory" commencement of the civil forfeiture action violated her right to due process. The District Court, after a 2-day bench trial held in January 1978, determined that the time which had elapsed was reasonable under the circumstances and therefore declared the currency forfeited under 31 U. S. C. § 1102.

A divided panel of the Court of Appeals for the Ninth Circuit reversed. 645 F. 2d 836 (1981). Proceeding from the premise that the Government must bring forfeiture actions promptly because seizures infringe upon property rights, the Court of Appeals concluded that the Government's 18-month delay in filing its forfeiture action was unjustified. The Court of Appeals specifically held that pending administrative or criminal investigations cannot justify the delay when the necessary elements for a forfeiture were established at the time of the seizure and when the claimant seeks a speedy resolution of the claim. The Court of Appeals likewise rejected the Government's argument that the claimant should be required to show that the delay prejudiced her ability to present a defense to the forfeiture action. As a remedy for the due process violation, the Court of Appeals ordered dismissal of the Government's forfeiture action.[8]

Since other Circuits have determined that pending criminal[9] or administrative[10] investigations and prejudice to the claimant[11] are relevant considerations in determining

---

[8] Because we find no violation of due process, we do not decide whether dismissal of the forfeiture action with prejudice would be an appropriate remedy for undue delay.

[9] E. g., White v. Acree, 594 F. 2d 1385 (CA10 1979).

[10] E. g., United States v. Thirty-Six Thousand One Hundred & Twenty-Five Dollars in U. S. Currency, 642 F. 2d 1211 (CA5), cert. denied, 454 U. S. 835 (1981) (aff'g 510 F. Supp. 303 (ED La. 1980)).

[11] E. g., United States v. Various Pieces of Semiconductor Manufacturing Equipment, 649 F. 2d 606 (CA8 1981); United States v. One 1976 Mercedes 450 SLC, 667 F. 2d 1171 (CA5 1982).

whether a delay in instituting forfeiture proceedings violates due process, we granted certiorari to resolve the conflict. 455 U. S. 1015 (1982). We reverse.

## II

The due process issue presented here is a narrow one. Vasquez concedes that the Government could constitutionally seize her property without a prior hearing.[12] Nor does Vasquez challenge the sufficiency of the judicial hearing that was eventually held. She argues only that the Government's delay in filing a civil forfeiture proceeding violated her due process right to a hearing "'at a meaningful time,'" *Fuentes* v. *Shevin*, 407 U. S. 67, 80 (1972), quoting *Armstrong* v. *Manzo*, 380 U. S. 545, 552 (1965). Unlike the situation where due process requires a prior hearing, there is no obvious bright line dictating when a postseizure hearing must occur. Because our prior cases in this area have wrestled with whether due process requires a preseizure hearing, we have not previously determined when a postseizure delay may be-

---

[12] The general rule, of course, is that absent an "extraordinary situation" a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified. *Boddie* v. *Connecticut*, 401 U. S. 371, 378–379 (1971). See also *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U. S. 601 (1975); *Fuentes* v. *Shevin*, 407 U. S. 67 (1972); *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969); cf. *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600 (1974). But we have previously held that such an extraordinary situation exists when the government seizes items subject to forfeiture. In *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U. S. 663 (1974), the Court upheld a Puerto Rico statute modeled after a federal forfeiture statute, 21 U. S. C. § 881(a), which allowed Puerto Rican authorities to seize, without prior notice or hearing, a yacht suspected of importing marihuana. *Pearson Yacht* clearly indicates that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture. Such a requirement would make customs processing entirely unworkable. The government interests found decisive in *Pearson Yacht* are equally present in this situation: the seizure serves important governmental purposes; a preseizure notice might frustrate the statutory purpose; and the seizure was made by government officials rather than self-motivated private parties.

come so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time.[13]

The Government argues that there is no general due process requirement of prompt postseizure filing of a judicial forfeiture action. Rather, the Government urges that the standard for assessing the timeliness of the suit be the same as that employed for due process challenges to delay in instituting criminal prosecutions. As articulated in *United States* v. *Lovasco*, 431 U. S. 783 (1977), such claims can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges. The Government argues that in the absence of unfair conduct of this sort, the timeliness of the suit is controlled only by the applicable statute of limitations. Here, Congress has required the Government to institute forfeiture proceedings within five years. 19 U. S. C. § 1621 (1976 ed., Supp. V).

We reject the Government's suggestion that *Lovasco* provides the appropriate test for determining whether the delay violates the due process command. *Lovasco* recognized that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded. While the

---

[13] In *United States* v. *Thirty-seven Photographs*, 402 U. S. 363 (1971), we construed a statute allowing customs officials to seize obscene material as requiring a postseizure filing within 14 days and completion of the hearing in an additional 60 days. That case interpreted the statute so as to avoid possible First Amendment problems of prior restraint. The case did not involve, and thus we had no occasion to address, the time restraints imposed by the Due Process Clause. Even if we were inclined to interpret the statutes here in such a way as to avoid any due process question, it would be impossible to read into the statutory scheme, as we did in *Thirty-seven Photographs*, a short statute of limitations, since 19 U. S. C. § 1621 (1976 ed., Supp. V) expressly allows the Government to bring a civil forfeiture proceeding within five years.

value of allowing the Government time to pursue its investigation applies to the civil forfeiture situation as well as the criminal proceeding, a major distinction exists. A suspect who has not been indicted retains his liberty; a claimant whose property has been seized, however, has been entirely deprived of the use of the property.

A more apt analogy is to a defendant's right to a speedy trial once an indictment or other formal process has issued. In that situation, the defendant no longer retains his complete liberty. Even if he is allowed to post bail, his liberty is subject to the conditions required by his bail agreement. In *Barker* v. *Wingo*, 407 U. S. 514 (1972), we developed a test to determine when Government delay has abridged the right to a speedy trial. The *Barker* test involves a weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.*, at 530.

Of course, *Barker* dealt with the Sixth Amendment right to a speedy trial rather than the Fifth Amendment right against deprivation of property without due process of law. Nevertheless, the Fifth Amendment claim here—which challenges only the length of time between the seizure and the initiation of the forfeiture trial—mirrors the concern of undue delay encompassed in the right to a speedy trial. The *Barker* balancing inquiry provides an appropriate framework for determining whether the delay here violated the due process right to be heard at a meaningful time. We have often repeated the seminal statement from *Morrissey* v. *Brewer*, 408 U. S. 471, 481 (1972), that "due process is flexible and calls for such procedural protections as the particular situation demands." *E. g., Schweiker* v. *McClure*, 456 U. S. 188, 200 (1982); *Memphis Light, Gas & Water Division* v. *Craft*, 436 U. S. 1, 14–15, n. 15 (1978). The flexible approach of *Barker*, which "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis," 407 U. S., at 530, is thus an appropriate inquiry for determining whether

the flexible requirements of due process have been met.    As we stressed in *Barker*, none of these factors is a necessary or sufficient condition for finding unreasonable delay.    Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case.[14]

## III

In applying the *Barker* balancing test to this situation, the overarching factor is the length of the delay.    As we said in *Barker*, the length of the delay "is to some extent a triggering mechanism."    *Ibid.*    Little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case.    Our inquiry is the constitutional one of due process; we are not establishing a statute of limitations.    Obviously, short delays—of perhaps a month or so—need less justification than longer delays.    We regard the delay here—some 18 months— as quite significant.    Being deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden.

Closely related to the length of the delay is the reason the Government assigns to justify the delay.    *Id.*, at 531.    The Government must be allowed some time to decide whether to institute forfeiture proceedings.    The customs official's decision to seize property is of necessity a hasty one.    Both the Government and the claimant have an interest in a rule that allows the Government some time to investigate the situation in order to determine whether the facts entitle the Government to forfeiture so that, if not, the Government may return the money without formal proceedings.    Cf. *Lovasco, supra,*

---

[14] The deprivation in *Barker*—loss of liberty—may well be more grievous than the deprivation of one's use of property at issue here.    Thus, the balance of the interests, which depends so heavily on the context of the particular situation, may differ from a situation involving the right to a speedy trial.

at 791. Normally, investigating officials can make such a determination fairly quickly, so that this reason alone could only rarely justify a lengthy delay.

An important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings. This delay can favor both the claimant and the Government. Cf. *Barker, supra,* at 521; *Lovasco, supra,* at 794–795. In many cases, the Government's entitlement to the property is clear, and the claimant's only prospect for reacquiring the property is that the Secretary will favorably exercise his discretion and allow remission or mitigation. If the Government were forced to initiate judicial proceedings without regard to administrative proceedings, the claimant would lose this benefit. Further, administrative proceedings are less formal and expensive than judicial forfeiture proceedings. Given the great percentage of successful petitions, allowing the Government to wait for action on administrative petitions eliminates unnecessary and burdensome court proceedings. Finally, a system whereby the judicial proceeding occurs after administrative action spares litigants and the Government from the burden of simultaneously participating in two forums.[15]

The Government takes the extreme position, however, that a pending administrative petition should completely toll the requirement of filing a judicial proceeding. Nothing in the statutory scheme or in our cases supports this argument. A claimant need not waive his right to a prompt judicial hearing simply because he seeks the additional remedy of an administrative petition for mitigation.[16] Unreasonable delay

---

[15] By regulation, the Secretary is not allowed to process any petition for remission or mitigation while a civil forfeiture proceeding is pending. 19 CFR § 171.2(a) (1982).

[16] Under the 1978 revisions to 19 CFR § 162.31(a), the Customs Service is now required to warn claimants that unless they agree to defer judicial forfeiture proceedings until completion of the administrative process, the case

in processing the administrative petition cannot justify prolonged seizure of his property without a judicial hearing. Rather, the pendency of an administrative petition is simply a weighty factor in the flexible balancing inquiry.

Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings. A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding, which—as here—may often include forfeiture as part of the sentence. A prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution. Compare Federal Rule of Civil Procedure 26(b) with Federal Rule of Criminal Procedure 16. In some circumstances, a civil forfeiture proceeding would prejudice the claimant's ability to raise an inconsistent defense in a contemporaneous criminal proceeding. See, *e. g.*, *United States* v. *U. S. Currency*, 626 F. 2d 11 (CA6 1980). Again, however, the pendency of criminal proceedings is only an element to be considered in determining whether delay is unreasonable. Although federal criminal proceedings are generally fairly rapid since the advent of the Speedy Trial Act of 1974, 18 U. S. C. § 3161 *et seq.* (1976 ed. and Supp. V), the pendency of a trial does not automatically toll the time for instituting a forfeiture proceeding.

In this case the Government relies on both a pending petition for mitigation or remission and a pending criminal proceeding to justify the delay in filing civil forfeiture proceedings. During the initial seven months after the seizure the Customs Service was determining whether to grant the petition. This investigation required responses to inquiries to state, federal, and Canadian law enforcement officers. Such an investigation inherently is time consuming, and there is no

---

will be referred promptly to the United States Attorney for institution of judicial proceedings, or summary forfeiture proceedings will be begun.

indication that it was not pursued with diligence. The Customs Service then referred the matter to the United States Attorney, who obtained criminal indictments within two months. Importantly, one count of the indictment sought forfeiture as part of the sentence. If the Government had prevailed, a civil forfeiture would have been rendered unnecessary. There is no evidence in the record that the Government was responsible for the slow pace of the criminal proceedings, which reached a verdict five months later. After the criminal trial ended, the Secretary of the Treasury made a final decision within three months to deny the petition, and the United States Attorney promptly filed a civil forfeiture proceeding.

We are impressed by the assessment made by the District Court that the Goverment had acted with all due speed. Indeed, in an oral colloquy during trial the District Judge commented:

> "I have been anxious to see in this case whether there has been a lot of dilitory [sic] conduct that the government has really not done what it should do in order to push this thing with all reasonable speed, and, frankly, I don't see any point in which the government has been lax.
>
> "If I had found such, and I found it an unreasonable length of time, I would have been happy to so hold . . . .
>
> "But, in view of the evidence here, I just cannot see any way in which this Court can say that the government has not pursued their claim in all reasonable diligence." App. 77.

In sum, the Government's diligent pursuit of pending administrative and criminal proceedings indicates strongly that the reasons for its delay in filing a civil forfeiture proceeding were substantial.

The third element to be considered in the due process balance is the claimant's assertion of the right to a judicial hear-

ing. A claimant is able to trigger rapid filing of a forfeiture action if he desires it. First, the claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property. See *Slocum* v. *Mayberry*, 2 Wheat. 1, 10 (1817) (Marshall, C. J.). Less formally, the claimant could simply request that the Customs Service refer the matter to the United States Attorney. If the claimant believes the initial seizure was improper, he could file a motion under Federal Rule of Criminal Procedure 41(e) for a return of the seized property. Vasquez did none of these things and only occasionally inquired about the result of the petition for mitigation or remission and asked that the Secretary reach a decision promptly. The failure to use these remedies can be taken as some indication that Vasquez did not desire an early judicial hearing.

The final element is whether the claimant has been prejudiced by the delay. The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence. Such prejudice could be a weighty factor indicating that the delay was unreasonable. Here, Vasquez has never alleged or shown that the delay affected her ability to defend against the impropriety of the forfeiture on the merits. On the contrary, Vasquez conceded that the elements necessary for a forfeiture under § 1102(a) were present in her case.

### IV

In this case, the balance of factors indicates that the Government's delay in instituting civil forfeiture proceedings was reasonable. Although the 18-month delay was a substantial period of time, it was justified by the Government's diligent efforts in processing the petition for mitigation or remission and in pursuing related criminal proceedings. Vasquez never indicated that she desired early commencement of a civil forfeiture proceeding, and she has not asserted or shown

that the delay prejudiced her ability to defend against the forfeiture. Therefore, the claimant was not denied due process of law. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE STEVENS, dissenting.

The Fifth Amendment provides that no person shall be deprived of property without due process of law. In this case the claimant was deprived of her property on September 10, 1975.* No preseizure process of any kind was provided. The postseizure proceeding that, under the Court's view, satisfies the constitutional requirement was commenced on March 22, 1977, over 18 months later.

None of the various activities that various Government bureaucrats undertook before filing the civil forfeiture proceeding was required by the Constitution or by any statute. None of those activities made it impossible, or even arduous, for the Government to act promptly to establish its right to hold claimant's currency. In my opinion a rule that allows the Government to dispossess a citizen of her property for more than 18 months without her consent and without a hearing is a flagrant violation of the Fifth Amendment.

I respectfully dissent.

---

*The property was not contraband; it was seized simply because claimant made a misstatement to a customs officer.