UNITED STATES of America, Plaintiff,

v.

Austin Roosevelt CILLS, Defendant.

Crim. No. 87–526 (JP).

United States District Court, D. Puerto Rico.

Oct. 7, 1988.

Jorge Vega Pacheco, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Francisco M. Dolz, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

On December 10, 1987, Austin Roosevelt Cills pleaded guilty to the only count of an indictment charging him with carrying 17,-300 Puerto Rico lottery tickets in foreign commerce. *See* 18 U.S.C. § 1301. At the same hearing, the Court imposed sentence, following the government's recommendation that Cills be fined $1,000.00. On February 22, 1988, Cills filed a motion for the return of $16,850, which he had in his possession at the time he was arrested for transporting the lottery tickets.[1] He has yet to receive the property. At a hearing on this Court's Order to show cause, held on May 16, 1988, the government stated that a warrant for seizure of the property had been filed, and that Cills' remedy lay in that independent civil action. The Court ordered the parties to file briefs on their positions. The parties have done so, and the government has recently filed a supplemental brief.

The government has taken two slightly different positions in its submissions to the Court. On March 7, 1988, the government contended that the $16,850 was properly seized as evidence and had subsequently been given to the U.S. Customs Service for institution of forfeiture proceedings. On May 31, 1988, the government argued that the property was not seized as evidence, but for forfeiture, and that Cills could not recover the money by use of Rule 41(e) of the Federal Rules of Criminal Procedure.[2]

The defendant argues first that the seizure by the Customs Service does not divest this Court of authority to order return of the money because the Court is empowered to grant relief under Rule 41(e) or under its ancillary and supervisory power, *citing U.S. v. Wright,* 610 F.2d 930 (D.C. Cir.1979) and numerous other cases. As to the merits of the issue, the defendant argues that the Customs Service has no right to seize his property under the circumstances. These circumstances bear inquiry at this point.

The defendant has repeatedly claimed, and the government has not challenged, the following: that Cills gave the Customs Inspector a Form # 4790 that under-reported the amount of currency he carried by $2,400 (i.e. $14,450 rather than $16,850); that the Customs Inspector did not accept the form and gave Cills a new form to complete; that Cills then reported the full amount he was carrying on the new form; that Cills was arrested for carrying lottery tickets in violation of 18 U.S.C. § 1301; and that Cills was never charged with any violation other than § 1301.

## *Discussion*

At the outset, the Court notes that the government's civil forfeiture action regarding the $16,850 readily appears to be subject to attack on due process grounds. *See United States v. $8,850,* 461 U.S. 555,

---

1. The government timely opposed Cills' motion, but the Court granted it as unopposed. The confusion over the timeliness of the government's opposition was resolved at a hearing called upon Cills' motion, held on May 16, 1988.

2. The government also argues that 31 U.S.C. § 5317(c) provides for forfeiture of all $16,850, not just the amount that exceeds the $10,000 reporting limit. While this argument is correct, it has no bearing on the propriety of returning the entire sum of Cills' cash, which is the issue now before the Court.

103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). In the *$8,850* case, the Court considered a claim that an 18–month delay by the government in filing a proceeding for forfeiture (under the predecessor statute to § 1301) violated the claimant's right to due process of law. The claimant, Vázquez, had failed to report $8,850 she was carrying from Canada to Los Angeles, on September 10, 1975, and a customs inspector discovered and seized the money. About one week later, the Customs Service officially informed Vazquez by letter that the case was subject to forfeiture and that she could file a petition to remit or mitigate the amount of forfeiture. This action by the Customs Service was accomplished pursuant to 19 C.F.R. § 162.31(a) and § 171.12(b) (1982). Vázquez filed a petition for remission in late September, 1975.

Over the next several months, the Customs Service conducted an investigation, and in May, 1976, it recommended prosecution. On June 15, 1976, Vázquez was charged in a two-count indictment (31 U.S.C. §§ 1001, 1058). Trial was completed on December 24, 1976, and Vázquez requested action on her petition for remission. In March, 1977, the Customs Service refered the forfeiture claim to the U.S. Attorney, who then filed a complaint seeking forfeiture.

The Court held that the four-part balancing test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), provided the framework for determining the constitutionality of the 18–month delay from the time of seizure to the time of instituting the forfeiture action. That test requires the Court to weigh four factors: "length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant." *U.S. v. $8,850*, 461 U.S. at 564, 103 S.Ct. at 2012, *citing Barker*, 407 U.S. at 530, 92 S.Ct. at 2192.

In analyzing the "overarching factor," length of delay, the Court noted that "short delays—of perhaps a month or so—need less justification than longer delays. We regard the delay here—some 18 months—as quite significant. Being de-

prived of a substantial sum of money for a year and a half is undoubtedly a significant burden." *U.S. v. $8,850*, 461 U.S. at 565, 103 S.Ct. at 2012.

In the present case, Cills has been deprived of a substantial sum of money since October 5, 1987. The money was seized as evidence on that date. It was then held by the government as evidence until the government obtained a plea of guilty from the defendant on December 10, 1987. On that date, the government had an obligation to return the money to the defendant. *U.S. v. Farrell*, 606 F.2d 1341, 1343 (D.C.Cir.1979). From December 10, 1987, to May 12, 1988, when the government filed the forfeiture claim, Cills was deprived of his property without *any* process of law.

This is plainly not a case in which the remaining *Barker* factors justify a significant delay in the institution of proceedings. There is no conceivable reason for the delay: this is not a case that required any further investigation, and it is not a case in which the administrative proceedings would lead to a less expensive resolution of the case. *See U.S. v. $8,850*, 461 U.S. at 565–66, 103 S.Ct. at 2012–13. The government had all the information related to a possible violation of § 5316 on December 10, 1987, and it chose not to charge the defendant. And there is no evidence that administrative proceedings were ever instituted pursuant to Customs Service Regulations.

Not only was there no justifiable reason for the government's delay, but the third *Barker* factor—the claimant's assertion of his rights—also weighs in favor of Cills. The defendant has repeatedly petitioned this Court for return of the money and has, in fact, received orders to that effect. Rather than openly defending its purported interest in the money, however, the government chose to engage in a shell game for over five months.

The final factor addressed by *Barker* and *U.S. v. $8,850*, prejudice of the defendant's interests as a result of the delay, has not been shown to be a significant factor in this case.

Although the due process question is not before this Court, *U.S. v. $8,850* has provided a useful framework for inquiry into the government's actions in the case. For the reasons discussed above, it is apparent that the government has effected a seizure of the $16,850 without due process of law.

■ The government argues that the proper context for any consideration of the $16,850 is the civil forfeiture suit and that Rule 41(e) cannot be used to bypass that proceeding. This argument ignores this Court's ancillary powers to direct return of property at the close of a criminal case. *U.S. v. Wright*, 610 F.2d 930. The general rule in criminal cases is that seized property should be returned once the proceedings are terminated, *U.S. v. Farrell*, 606 F.2d at 1343, and this Court plainly has the authority to issue such an order.

The Court should of course take note of claims of ownership and possible rights to possession adverse to that of the claimant's before ordering return of property. *U.S. v. Palmer*, 565 F.2d 1063, 1065 (9th Cir.1977). But such a claim must have some validity—it cannot be a mere invention by the government to justify retention of the property. It is clear to this Court that the government never had a colorable right to the $16,850.

The defendant's claim that he declared the proper amount of currency in the only form # 4790 fully submitted to the inspector is credible—especially in light of the government's decision not to charge Cills with violation of § 5316. This decision not to charge was obviously not an act of grace. Neither is it likely that it reflected a measured decision to proceed in the civil rather than criminal arena—this being a district in which an overriding concern in the U.S. Attorney's Office is criminal convictions and statistics. The decision not to charge was clearly based on the lack of evidence of Cills' violations of § 5316. As admitted in the government's March 7, 1987, motion, seizure of the money was justified only because it could have been used as evidence in Cills' criminal case.

The Court therefore concludes that there was never probable cause to believe that Cills had violated § 5316. As soon as the defendant had pleaded guilty and had been sentenced on December 10, 1987, the $16,850 should have been returned to him. The government did not decide until much later to institute forfeiture proceedings for violation of § 5316. As noted above, even this belated change of theory cannot justify the government's continued retention of Cills' property, which has been withheld in violation of Cills' right to due process of law. Moreover, the money has been seized since December 10, 1987, without probable cause to believe that Cills had violated the reporting statute. Not only has this deprived Cills of the use of his money, but it has forced him to expend his resources in defending the forfeiture action and has placed him in the difficult position of negotiating an expensive settlement with the government.

Therefore, the Court ORDERS the government to return the $16,850 to Austin Roosevelt Cills within 24 hours of entry of this Order. Failure to meet this deadline will result in contempt proceedings against the officials responsible for withholding the funds.

The Clerk shall notify the parties by telephone of this Order.

IT IS SO ORDERED.