**In re PROTECTIVE ORDER ON INTER-GROUP INVESTMENT CORPORATION'S ACCOUNT AT MEGA BANK.**

**UNITED STATES of America,**

**v.**

**Augusto ARBOLEDA–HURTADO, a/k/a Augusto Arboleda–Gonzalez, Nestor Julian Quinones, Victorio Javier Martinez, Ofir Martinez, Theresa Bejarano, Eduardo Bejarano, German Casas, John Jairo Espinosa, Carlos Paz, Jorge Hernandez, and Alvaro Abreu–Torres, a/k/a "Arturo," Defendants.**

**No. 91–0853–CR.**

United States District Court, S.D. Florida.

April 22, 1992.

James G. McAdams, III, Acting U.S. Atty. by Edward Ryan, Madeleine R. Shir-

ley, Asst. U.S. Attys., Miami, Fla., for plaintiff.

Miguel Del Aguila, P.A., Miami, Fla., for defendants.

## ORDER ON PETITION FOR RELEASE OF FUNDS FROM RESTRAINT OR IN THE ALTERNATIVE FOR A PRE-TRIAL HEARING

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Petitioner Intergroup Investment Corporation's Petition for Release of Funds from Restraint or in the Alternative for a Pretrial Hearing, filed February 13, 1992.

### I. Background

On November 22, 1991, an indictment issued against the above-referenced defendants charging them with the illegal importation and distribution of narcotics. The indictment also initiated criminal forfeiture proceedings against property of the defendants and third parties, pursuant to 21 U.S.C. § 853(e)(1)(A). On the same day, the Honorable Kenneth L. Ryskamp, United States District Judge, Southern District of Florida, issued a Protective Order freezing a number of accounts at financial institutions. One such account was account number 090300072919 at Mega Bank of Miami, Florida, registered in the name of Petitioner, Intergroup Investments Corporation ("Intergroup"). (Protective Order, D.E. # 170, at 4.) Intergroup is an investment and money exchange corporation with its home office in Bogota, Colombia. Judge Ryskamp's Protective Order froze Intergroup's entire account, containing

$83,707.50, upon the affidavit of Albert J. Monica, Special Agent of the Internal Revenue Service, Criminal Investigation Division. (Affidavit, D.E. # 174.) Special Agent Monica stated that three checks totaling $260,347.00, and representing laundered funds from the defendants' alleged drug smuggling operation, were deposited in Intergroup's account in October 1991. (Affidavit, D.E. # 174, at 10.)

### II. Due Process Discussion

Intergroup contends that the District Court's issuance of a protective order freezing its account at Mega Bank without holding an immediate post-restraint hearing violates its fifth amendment right to due process. The fifth amendment provides that a person may not be deprived of his life, liberty, or property without due process of law. U.S. Const. amend. V. Thus, this Court must decide: first, whether Intergroup suffered a deprivation of a life, liberty, or property interest; and second, whether that deprivation occurred without due process of law.

The Court finds that Intergroup has suffered a deprivation of a property interest. The government claims title in the account as of the time of the commission of the crime, through the relation back doctrine.[1] The government's title, however, is not finally established until the entry of a judgment of conviction, and after the third party has had the opportunity of a hearing following the judgment, as detailed in 21 U.S.C. § 853(n).[2] Therefore, although the protective order does not definitively divest the ownership rights of the third party, it does remove those assets from the third

---

1. 21 U.S.C. § 853(c) provides:

   All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the

property was subject to forfeiture under this section.

2. 21 U.S.C. § 853(n), which specifically refers to third party interest, provides:

   (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

party's immediate control which is a significant property interest. Having found a deprivation of a protected interest, the Court must next address whether the method of deprivation comports with the requirements of the due process clause.

■ Due process requires that a person not be deprived of his property without notice and opportunity for a hearing. *See Fuentes v. Shevin*, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 2002–03, 32 L.Ed.2d 556 (1972). Federal courts, however, have carved out an exception to this hearing requirement in forfeiture cases. *United States v. Bissell*, 866 F.2d 1343, 1353 (11th Cir.1989) ("The fifth amendment generally prohibits the deprivation of property without a prior hearing, *Fuentes*, 407 U.S. at 90, 92 S.Ct. at 1999, but one exception to the need for a prior hearing exists when the government seizes items subject to forfeiture.") (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974)). Thus, the petitioner had no right to a hearing before the government restrained their assets. The Court must, however, consider whether the petitioner has a right to a post-restraint hearing prior to the criminal trial. *Bissell*, 866 F.2d at 1353. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) In United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

In addressing due process claims within the context of criminal forfeiture proceedings, the Eleventh Circuit applies the test developed by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Bissell*, 866 F.2d at 1352–53. The *Barker* test requires the weighing of four factors: The length of delay in the criminal proceedings; the reason for the delay; the property claimant's assertion of his right to a hearing; and the prejudice to the claimant. *Id.* at 1352.

As to the first and second factors of the *Barker* test, the Court anticipates a nine month delay between the seizure and the criminal trial, with the corresponding entry of forfeiture.[3] Pursuant to 21 U.S.C. § 853(n), however, petitioners have a right to a hearing within thirty days of their filing a petition at the conclusion of the criminal trial. Thus, the petitioner can expect a ten to eleven month delay between the seizure and a hearing to adjudicate the validity of its alleged interest in the property. The Court finds that ten to eleven months is not an undue delay. *United States v. $8,850*, 461 U.S. at 569–70, 103 S.Ct. at 2014–15 (An eighteen month delay between seizure and the civil forfeiture trial did not violate a claimant's due process right to have a meaningful hearing at a meaningful time.)

Considering the third *Barker* factor—petitioner's assertion of his right to a judicial hearing—due process requires that the party who may be deprived of a property right not only be informed of that possibility but also have an adequate opportunity to respond "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See United States v. $8,850*, 461 U.S. at 562–63, 103 S.Ct. at 2010–12. Under 21 U.S.C. § 853, petitioners are not entitled to a post-restraint hearing prior to trial. Indeed, when one contrasts pertinent provision of the statute, Section 853(e)(1)(A), with the provision governing pre-indictment freeze orders, Section 853(e)(1)(B), it is clear that Congress did not intend that such a hearing be held. The legislative history further supports this view of Congressional intent:

> [Section 853(e) ](1)(A) provides that a restraining order may issue "upon the filing of an indictment or information ... and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section." Thus, the

---

**3.** The government brought the indictment in this case on November 22, 1991. (Indictment, D.E. # 1.) The case is currently set for trial for the two-week trial calendar commencing July 13, 1992. (Order Re-establishing Trial Date of July 13, 1992, D.E. # 197.) "Most federal criminal proceedings will occur fairly rapidly under the Speedy Trial Act, 18 U.S.C. § 3161 et seq." *Bissell*, 866 F.2d at 1353.

probable cause established in the indictment or information is, in itself, to be a sufficient basis for issuance of a restraining order. While the court may consider factors bearing on the reasonableness of the order sought, it is not to "look behind" the indictment or require the government to produce additional evidence regarding the merits of the case as a prerequisite to issuing a post-indictment restraining order. . . .

In contrast to the pre-indictment restraining order authority set out in [section 853(e) ](1)(B), the post-indictment restraining order provision does not require prior notice and opportunity for a hearing. The indictment or information itself gives notice of the government's intent to seek forfeiture of the property. Moreover, the necessity of quickly obtaining a restraining order after indictment in the criminal forfeiture context presents exigencies not present when restraining orders are sought in the ordinary civil context.

S.Rep. No. 225, 98th Cong., 2d Sess., 202–03 (1984), reprinted in 1984 U.S.C.C.A.N. 3374, 3385–86.

"Although [section 853(e)(1)(A) ] does not require the district court to hold a post-restraint hearing, the legislative history evidences that such a hearing may be held to determine whether legitimate assets—those outside the scope of the indictment—have been wrongfully restrained." *Bissell,* 866 F.2d at 1353.

This provision [section 853(e)(1)(A) ] does not exclude, however, the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (e.g., where information presented at the hearing shows that the property restrained was not among the property named in the indictment). However, it is stressed that *at such a hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the* *government's case on which the forfeiture is to be based.*

S.Rep. No. 225, 98th Cong., 2d Sess., 203 (1984), reprinted in 1984 U.S.C.C.A.N. 3374, 3385–86 (emphasis added). "Also, '[i]f a claimant believes *the initial seizure was improper,* he could file a motion under Federal Rule of Criminal Procedure 41(e) for a return of seized property.' " *Id.* at 1353 (emphasis added). Petitioner, however, has not alleged that the assets seized were outside the scope of the indictment, nor invoked the application of Rule 41(e).

The statute does afford the petitioner a hearing following the criminal trial and an order of forfeiture. According to 21 U.S.C. § 853(n), following the entry of an order of forfeiture and publication of notice by the United States, a third party claimant must petition the Court for a hearing to adjudicate the validity of its alleged interest in the property. At this hearing the petitioner must establish, by a preponderance of the evidence, that it was a bona fide purchaser for value of such property, who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under § 853. 21 U.S.C. § 853(n)(6)(B). Additionally, petitioner may show that its interests were acquired prior to the commission of prohibited acts by the defendant. 21 U.S.C. § 853(n)(6)(A). The Court finds that this post-trial hearing represents an opportunity for the petitioner to respond at a meaningful time and in a meaningful manner.

The fourth *Barker* factor requires that the Court evaluate the prejudice suffered by the petitioner absent a post-restraint hearing prior to trial. "The clear danger posed by this statutory scheme is the possibility that perfectly legitimate assets will be wrongfully restrained." *Bissell,* 866 F.2d at 1354. The Eleventh Circuit has stated that in analyzing this fourth factor of the *Barker* test, "a due process analysis must comprehend both [the claimant's and the government's] interests." *Id.* at 1354 (citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)).

Intergroup's interest encompasses its access to funds in the account at Mega Bank. Judge Ryskamp's Protective Order has curtailed such access only in a temporary fashion. The government's interest in delaying a "hearing on the merits of the government's case until trial [is] substantial, particularly in light of the government's compelling regulatory interest in preventing crime." *Bissell,* 866 F.2d at 1353. Moreover, the United States Supreme Court has found an additional dimension to the government's interest in protecting the forfeiture process:

> [T]he statute permits 'rightful owners' of forfeited assets to make claims for forfeited assets before they are retained by the government. See 21 U.S.C. § 853(n)(6)(A). The Government's interest in winning undiminished forfeiture thus includes the objective of returning property, in full, to those wrongfully deprived or defrauded of it. Where the Government pursues this restitutionary end, the government's interest in forfeiture is virtually undistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim.

*Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).[4]

Congress has also sought to protect a strong governmental interest through the scheme of section 853. Indeed, in addressing the state of the law prior to the enactment of the present statute, the Senate Report stated:

> Although current law does authorize the issuance of restraining orders in the post-indictment period, neither the RICO nor CCE statute articulates any standard for the issuance of these orders. Certain recent court decisions have required the

government to meet essentially the same stringent standard that applies to the issuance of temporary restraining orders in the context of civil litigation and have also held the Federal Rules of Evidence to apply to hearings concerning restraining orders in criminal forfeiture cases. In effect, such decisions allow the courts to entertain challenges to the validity of the indictment, and require the government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance of trial in order to obtain an order restraining the defendant's transfer of property alleged to be forfeitable in the indictment. Meeting such requirements can make obtaining a restraining order— the sole means available to the government to assure the availability of assets after conviction—quite difficult. In addition, these requirements may make pursuing a restraining order inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy and for jeopardizing the safety of witnesses and victims in racketeering and narcotics trafficking cases who would be required to testify at the restraining order hearing.

S.Rep. No. 225, 98th Cong., 2d Sess., 195–96 (1984), reprinted in 1984 U.S.C.C.A.N. 3374, 3378–79. *See also Bissell,* 866 F.2d at 1353. The Court finds these articulations of the government's interest persuasive. The government's interest, therefore, outweighs the petitioner's.

### III. Conclusion

The Court finds that proceedings prescribed by 21 U.S.C. § 853 do not violate petitioner's right to due process. In addition, because neither of the exceptions addressed in *Bissell* apply to the instant case, petitioner is only entitled to the post-trial hearing set forth in 21 U.S.C. § 853(n).

Thus, it is hereby,

---

**4.** In response to a sixth amendment challenge, the Supreme Court in *Caplin* held the criminal forfeiture statute constitutional, despite its effect of preventing a defendant from paying attorney fees. *Id.* at 2656. The Supreme Court also rejected the argument that the power available to prosecutors under the criminal forfeiture statute might be misused in a way that violates the due process clause. *Id.* at 2657.

ORDERED AND ADJUDGED that Intergroup's Petition for Release of Funds from Restraint or in the Alternative for a Pretrial Hearing is DENIED.

DONE AND ORDERED.