NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0371n.06

No. 22-3730

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 14, 2023
DEBORAH S. HUNT, Clerk

NICOLETTE CREMEANS; JAMES CREMEANS,　)

　　Plaintiffs-Appellees,　)

v.　)

SAMANTHA TACZAK; CITY OF CHILLICOTHE,　)
OH; KEITH WASHBURN, Chief of Police,　)

　　Defendants-Appellants.　)

)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

BEFORE: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

After the Chillicothe Police Department held over $30,000 of James and Nicolette Cremeans's money for over nineteen months, they sued, arguing the officers violated their due process rights. Defendant officers moved for summary judgment on absolute and qualified immunity grounds. The district court denied that motion, and we affirm.

I.

In early 2018, Chillicothe detectives investigated and surveilled plaintiffs, believing they were part of a large drug trafficking operation. On January 10, 2018, Chillicothe police stopped James for a traffic violation, and officers seized his cell phone and $1,080 in cash. When Nicolette arrived at the scene, they seized her cell phone and an additional $715. Officers then obtained and executed a search warrant for their home, which authorized a search for not only evidence of drug

crimes, but currency, financial records, and communication devices. They did not find any drugs or paraphernalia, but discovered and seized $33,715 in cash and various personal property.

Over the following months, plaintiffs demanded return of the seized property "several" times. Defendants refused, citing an ongoing investigation. Once their investigation was complete, in November 2018, Chillicothe police submitted their case to the Ross County Prosecutor. But the prosecutor did not immediately act on the case, so the police continued to hold plaintiffs' cash and property.

Meanwhile, in September 2018, plaintiffs filed a replevin action in state court. The judge ordered defendants to return Nicolette's cell phone and the $715 seized from her, but denied replevin as to all other items given the ongoing criminal investigation.

In June 2019, plaintiffs filed this lawsuit under 42 U.S.C. § 1983, alleging that defendants violated their Fourth and Fourteenth Amendment rights. Soon after, the Ross County Prosecutor indicted James for "receiving proceeds of an offense subject to forfeiture proceedings." That indictment did not include a separate forfeiture specification (which Ohio law requires, *see* Ohio Rev. Code § 2941.1417), nor had a civil forfeiture action been initiated against plaintiffs. On August 16, 2019, a state grand jury returned a second indictment against James that included the following forfeiture specification:

> The grand jurors further find and specify that U.S. currency in the amount equal to $30,855.82 belonging to James D. Cremeans, specifically, the $1080.00 in U.S. currency seized from the person of the said James D. Cremeans, and the $29,775.82 in U.S. currency seized from the residence of the said James D. Cremeans, . . . is subject to forfeiture.

Then, in October 2019, the district court granted plaintiffs' request for a preliminary injunction. The court noted that it was "at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment." It declared defendants' actions

-2-

unconstitutional and ordered "the return of property seized during the execution of a search warrant on January 10, 2018." James's pending state charges were dismissed in November 2020. In March 2021, defendants returned the cash to plaintiffs' counsel.

This case comes to us following the parties' cross motions for summary judgment. The district court granted defendants' motion on plaintiffs' Fourth Amendment claim, which is not at issue in this appeal. But the court declined to grant summary judgment in favor of either party on the Fourteenth Amendment claim, finding that defendants were not entitled to absolute or qualified immunity and that material disputes of fact precluded judgment. Defendants timely appealed.[1]

II.

Defendants argue they are entitled to absolute prosecutorial immunity because they were performing a prosecutorial function when they held the seized property. The district court disagreed, and we affirm.

"We review the district court's denial of a defendant's claims that he is entitled to absolute or qualified immunity *de novo*, as that issue is a question of law." *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003) (citation and brackets omitted). But we must defer to the district court's determinations of fact. *Adams v. Blount Cnty.*, 946 F.3d 940, 948–49 (6th Cir. 2020).

"Absolute immunity is the exception rather than the rule." *Spurlock*, 330 F.3d at 796 (citation and brackets omitted). We generally assume that qualified, not absolute, immunity is sufficient to protect a government actor. *Id.* So "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v.*

---

[1]Defendant City of Chillicothe seems to appeal the district court's denial of summary judgment in its favor on plaintiffs' municipal-liability claim, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but that claim is not "inextricably intertwined" with the reviewable claims on appeal. *See Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022) (citation omitted). We therefore dismiss the City's appeal for lack of jurisdiction.

*Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation omitted).  It does not matter that defendants are police officers, rather than prosecutors, because we use a "functional approach" to determine whether officials are entitled to absolute immunity, "which looks to the nature of the function performed, not the identity of the actor who performed it."  *Id.* (internal quotation marks omitted).

Prosecutorial immunity from suit under § 1983 applies to activities that are "integral part[s] of the judicial process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (citation omitted); *see also Price v. Montgomery Cnty.*, 72 F.4th 711, 719–20 (6th Cir. 2023).  "The analytical key to prosecutorial immunity . . . is *advocacy*—whether the actions in question are those of an advocate."  *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000).  So "the critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process."  *Id*. (citation omitted).  For example, prosecutors have absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  *Buckley*, 509 U.S. at 273.

But "prosecutors are not entitled to absolute immunity for" actions that are *not* "closely associated with the judicial process" like investigative or administrative acts.  *Id.* at 271 (citation omitted); *see also Burns v. Reed*, 500 U.S. 478, 483 n.2 (1991).  "[A] prosecutor who 'performs the investigative functions normally performed by a detective or police officer' such as 'searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested' is entitled only at most to qualified immunity."  *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999) (quoting *Buckley*, 509 U.S. at 273).

In defendants' view, if prosecutors are entitled to absolute immunity for their "professional evaluation of the evidence assembled by the police," *Buckley*, 509 U.S. at 273, then police officers

must be entitled to the same immunity when they hold the evidence (and therefore facilitate the prosecutor's evaluation). More specifically, they contend that once their investigation was complete and they were just holding the evidence pending a prosecutorial decision, the possession became a prosecutorial function. We cannot agree.

Defendants never evaluated the evidence; they merely held it—a fact they admitted to the district court, calling their actions "ministerial." Nor did they do any advocacy, which is the "critical inquiry." *Holloway*, 220 F.3d at 775 (citation omitted). Absent that, we see no actions related to the judicial process—let alone ones that are "intimately associated with the judicial phase of the criminal process." *Id.* (citation omitted). Thus, defendants are not entitled to absolute immunity.

### III.

Defendants also argue they are entitled to qualified immunity. The district court disagreed, a decision we review de novo. *See Bey v. Falk*, 946 F.3d 304, 311 (6th Cir. 2019). We affirm.

It is "well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment," triggering certain due process requirements. *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972). All agree that the process due to plaintiffs was the initiation of a forfeiture action within a reasonable time; an "unreasonable" delay between the seizure and the filing of a forfeiture action violates the constitution. *See, e.g.*, *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564–65 (1983). We evaluate whether such a delay was unreasonable by balancing four factors (commonly referred to as the *Barker* factors): "the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant." *United States v. Ninety Three Firearms*, 330 F.3d 414, 424–25 (6th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530

(1972)).[2]  "[N]one of these factors is a necessary or sufficient condition for finding unreasonable delay.  Rather, these elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case."  *$8,850*, 461 U.S. at 565.

We review plaintiffs' constitutional claim through the lens of qualified immunity, which shields public officials from personal liability unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether defendants are entitled to qualified immunity, we must ask two questions:  (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted).  We may consider these questions in either order.  *Id.* at 236.

As to the first qualified-immunity question—whether there was a constitutional violation— defendants argue they were not "involve[d] in the Prosecutor's delay," so they cannot be held liable for any constitutional violation.  But, as the district court noted, the extent of defendants' involvement is a pure question of fact.  So we cannot address this argument.  *See Moldowan v. City of Warren*, 578 F.3d 351, 371 (6th Cir. 2009); *see also Adams*, 946 F.3d at 948–49.

We turn, then, to the second question.  For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Burwell v. City of Lansing*, 7 F.4th 456, 476 (6th Cir. 2021) (citation

---

[2]*Barker* set out these factors to evaluate a claim that the government violated a defendant's Sixth Amendment right to speedy trial.  407 U.S. at 530.  In *$8,850*, the Supreme Court held that the *Barker* test also applies to claims of deprivation of property without due process.  461 U.S. at 565.

and brackets omitted). "[C]learly established law should not be defined at a high level of generality"; rather, it must be "particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (internal quotation marks omitted). Under binding circuit precedent, we may look to decisions of the United States Supreme Court, our Court of Appeals, and the Ohio Supreme Court to determine whether a right is clearly established.[3] *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996).

The right at issue here was clearly established by the Ohio Supreme Court in 1990. In *State v. Baumholtz*, the State of Ohio seized Robin Baumholtz's car after police discovered her using cocaine in it. 553 N.E.2d 635, 635 (Ohio 1990). Baumholtz was arrested and charged with a felony and two misdemeanors. *Id.* The state did not immediately file a petition for forfeiture, instead waiting nearly six months. *Id.* at 636–37. The trial court denied the petition for forfeiture and the court of appeals affirmed, concluding that the state failed to comply with its own procedural requirements for forfeiture. *Id.* at 636. On appeal, the Ohio Supreme Court applied the four-factor *Barker* test and held that "[t]he delay in the instant case—approximately five and one-half months—[was] significant." *Id.* at 637–39. The state argued that forfeiture required an individual to be convicted of a felony, so the ongoing criminal case against Baumholtz justified the delay in filing. *Id.* But the Ohio Supreme Court rejected this argument, noting that the criminal proceedings did "not justify the delay in *filing* a petition for forfeiture." *Id.* On the third factor, the court noted that there was no evidence that Baumholtz asserted her right to a timely forfeiture proceeding, so this factor weighed against her. *Id.* Nor was there evidence that she suffered

---

[3]We recognize that the Supreme Court has merely assumed that non-Supreme Court caselaw can constitute clearly established law. *See, e.g.*, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) ("Even assuming that controlling Circuit precedent can clearly establish law for purposes of § 1983, . . . ."). But defendants do not challenge plaintiffs' reliance on Ohio caselaw on this ground, so we need not revisit our binding precedent today.

prejudice, so that too weighed against her. *Id.* Balancing these factors, the court noted this was "a close case," but "both the length of the delay and the lack of any credible reasons for the failure to promptly file a forfeiture petition must be given great weight." *Id.* at 640. Even with findings against Baumholtz on the other two factors, the Ohio Supreme Court concluded that "the delay in filing the forfeiture petition was unreasonable." *Id.*

At this stage, *Baumholtz* is directly on point. The district court made two findings of fact crucial to this conclusion: it found that the delay in this case was 19 months and 6 days (the period between the January 10, 2018, seizure and the August 16, 2019, indictment), and that "Defendants have offered no credible explanation for the latter half of the 19-month delay."[4] Indeed, plaintiffs' case is even stronger than Baumholtz's—the delay is nearly four times as long (first factor), and they timely sought return of their property "multiple" times "and filed a replevin action" (third factor). Accordingly, under *Baumholtz*, reasonable officers would have known that plaintiffs had been unlawfully deprived of their property.

Defendants seek to distinguish *Baumholtz* on three fronts, but none of their arguments persuade. They first contend that the seizure of a car is distinct from the seizure of cash. While the *Baumholtz* court did note that the seizure of a vehicle was particularly "onerous," *id.* at 638 (citation omitted), the Supreme Court has recognized that the deprivation of cash *is* "undoubtedly a significant burden," *$8,850*, 461 U.S. at 565. That it involved a vehicle does not render *Baumholtz* materially distinct. Defendants next argue (in their reply brief) that *Baumholtz* is

---

[4]Defendants argue that the criminal investigation justified the delay, but the district court rejected this argument because, while pending criminal proceedings are a factor to consider, they do not automatically toll the application of the due process clause to forfeiture proceedings. *See $8,850*, 461 U.S. at 567; *Baumholtz*, 553 N.E.2d at 639. In any event, the district court found the defendants' investigation stopped after ten months, so it could not justify the additional nine-month delay.

inapplicable because it applied an Ohio forfeiture statute, rather than the Fourteenth Amendment's due process clause. But they did not raise this argument in their opening brief, so it is forfeited. *See Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc). Finally, defendants note that *Baumholtz* did not involve a criminal investigation. That is incorrect: Baumholtz was arrested and charged with felony drug abuse, as well as misdemeanor assault and resisting arrest.[5] *Baumholtz*, 553 N.E.2d at 635. While the court never used the word "investigation," Baumholtz was the subject of ongoing criminal proceedings, just like plaintiffs here.

*Baumholtz* clearly establishes that a five-and-a-half-month delay in initiating forfeiture proceedings with no credible justification is unlawful, even without the exercise of diligence or suffering of prejudice. When compared to this case (a nineteen-month delay, no credible justification, *and* a finding that plaintiffs diligently attempted to get their property back), the district court properly concluded that defendants should have known that their conduct violated plaintiffs' clearly established rights.

IV.

For these reasons, we dismiss the appeal in part and affirm the judgment of the district court in part.

---

[5]These facts appear in the syllabus of the opinion, which is part of the opinion. *See* Ohio Rep. Op. R. 2.2 ("The law stated in an opinion of the Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes."); *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 566 n.3 (1977) (quoting *Hart v. Andrews*, 132 N.E. 846, 847 (Ohio 1921)) ("The syllabus is the language of the court.").