The UNITED STATES of America

v.

Paulette MARTIN, Defendant.

Criminal Case No. 04–235 RWT.

United States District Court, D. Maryland.

June 6, 2006.

Deborah A. Johnston, Office of the United States Attorney, Greenbelt, MD, Bonnie S. Greenberg, Office of the United States Attorney, Baltimore, MD, for The United States of America.

## MEMORANDUM OPINION

TITUS, District Judge.

In this opinion, the Court rules on two motions by Defendant Paulette Martin that concern the legality of the U.S. Government's continued possession of property that it initially seized pursuant to the federal civil forfeiture statute, but that it has now indicted for criminal forfeiture.

The first motion seeks return of the property under Fed.R.Crim.P. 41(g) and concerns the extent to which the requirements imposed upon the Government by the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, govern criminal forfeiture. It argues that because the Government did not obtain a warrant under the criminal forfeiture statute until the time limits under CAFRA had run, the Government has no right to continued possession of the property. Moreover, it argues, the criminal forfeiture warrants that did ultimately issue were deficient under the criminal forfeiture statute's own terms.

The second motion adopts the reasoning of the first, but moves additionally that any use of the seized property as evidence at trial be suppressed.

For reasons that will be explained below, the Court holds that it is legal for the Government to continue to detain the property pending the criminal trial and forfeiture action that is about to begin, and it accordingly denies both motions.

### I

Paulette Martin is one of thirty-one defendants in a drug conspiracy case that is being tried, in stages, before this Court. She was indicted, inter alia, for conspiracy to possess and distribute and possession and distribution of controlled substances including heroin, cocaine, and crack cocaine, on May 5, 2004, after an extensive investigation involving surveillance and

wiretap evidence, and she was arrested in her home in Takoma Park, Maryland, pursuant to a warrant on June 1, 2004. During this arrest and a series of other searches, all pursuant to search warrants, various property belonging to the Defendant was seized, including cash, two gold coins,[1] and a red Mercedes–Benz automobile. During May and June 2004, this property was augmented by money held in bank accounts seized by Immigration and Customs Enforcement (ICE) pursuant to seizure warrants issued under the civil forfeiture statute, 18 U.S.C. § 983.

By letter dated July 14, 2004, Martin was officially notified that the property had been seized by ICE.[2] *E.g.*, Mot. Exh. 1. The letter informed Martin that the property was subject to forfeiture under 18 U.S.C. § 981, "because [ICE] has probable cause to believe that [it] represent[s] proceeds of illegal activity," and advised her of what it described as her six legal options: (1) to file an administrative petition for relief from forfeiture within 30 days under 19 U.S.C. § 1618; (2) to file an offer in compromise under 19 U.S.C. § 1617; (3) to pay the full appraised value of the seized property in exchange for the property itself; (4) to do nothing, and let the Bureau of Customs & Border Protection ("Customs") proceed with administra-

tive forfeiture proceedings; (5) to abandon the property; and (6) to file a claim and have that claim referred to the United States Attorney for the commencement of a civil forfeiture action. Mot. Exh. 1, at 2. It was accompanied by "CAFRA Form AF–PUBLISH: Election of Proceedings." *Id.* at 4. This form, which stated that it "must be completed and returned with your petition or offer" or else administrative forfeiture would proceed, offered three check-box options, only one of which could be checked. Martin could (1) request that Customs delay administrative forfeiture proceedings and consider her petition, (2) abandon the property and request administrative forfeiture proceedings that would include public posting of the notice of seizure and intent to forfeit, or (3) request that Customs send her case for court action.

On July 30, 2004, Martin checked Box # 1 on Form AF–PUBLISH and submitted offers in compromise as to all the property. While the offers in compromise were pending, on January 19, 2005, the grand jury returned the Fourth Superseding Indictment in this case, which for the first time named the seized assets as subject to criminal forfeiture.

1. The government offered in its opposition to return the two gold coins to Martin's counsel, and the Court expects that the government has returned them by now or will do so promptly upon request. Accordingly, the Court will not consider or mention the gold coins further except on motion of a party.

2. Only samples of these documents have been submitted to the Court, *see* Mot. Exh. 1; Def.'s Hearing Exh. H–1. Similar letters were apparently sent to Martin as to each batch of property, including the cash and automobile that were initially seized in connection with search warrants rather than seizure warrants issued to banks, and Martin apparently responded the same way as to each batch of property.

Because (1) all of the property has been treated the same way by both parties; (2) all of the property was criminally indicted in the same indictment on January 19, 2005; (3) all of the property was treated together in the criminal seizure warrants that ultimately issued on July 25, 2005; and (4) the Court's conclusion is that Martin is not entitled to return of any of the property (excepting the gold coins), the Court will apply the same analysis to both the forfeiture of the cash and automobile and the forfeiture of the bank account proceeds. In so doing, it need not and therefore does not decide whether the tangible property could have been seized and held as evidence even if its continued retention under the forfeiture statutes was illegal.

The Port of Washington, a subdivision of Customs, rejected Martin's offer in compromise as to some of the property on February 4, 2005. Mot. Exh. 4. In response, on or about February 22, 2005,[3] Martin, through counsel, withdrew her offers in compromise as to the remaining property, filed a claim as to all the property, and requested that the claim be forwarded to the U.S. Attorney for court action. Mot. Exh. 5.

On July 18, 2005, Martin filed the first of the instant motions, arguing that because the time limits for the Government to initiate a civil forfeiture action had elapsed, Martin was entitled to return of the property. Paper No. 578.

Apparently in response to the filing of the motion, on July 25, 2005, the Government obtained two warrants for the seizure of the funds and the car, which remained in ICE custody. Opp. Exhs. A, B. The affidavits accompanying the warrant applications described the property as forfeitable under the criminal forfeiture statutes for drug crimes, 21 U.S.C. § 853(a), (p). The Government then filed its opposition to the first motion, in which it argued that the motion was moot in light of the newly-obtained warrants. Paper No. 586.

Martin argues in reply that the criminal forfeiture warrants do not render the case moot, for two reasons. First, she argues that the acquisition of the criminal forfeiture warrants was untimely under the deadlines imposed by CAFRA, and that the illegality of the Government's continued possession of her property cannot be cured. Second, she argues that the allegedly-criminal forfeiture warrants were deficient even if they were timely.

Deciding these questions requires the Court to determine whether the deadlines imposed by CAFRA bind the Government when it never attempts to consummate a civil forfeiture under CAFRA, but instead indicts the property criminally. This, in turn, requires a close examination of the text of CAFRA itself, as there appears to be no case law directly on point.

## II

### A

CAFRA was enacted in 2000 to curb what Congress perceived as abuses of the existing civil forfeiture system. *See* SENATE JUD. COMM., STAFF REPORT ON S.1931, CIVIL ASSET FORFEITURE REFORM ACT, http://judiciary.senate.gov/oldsite/civilass. htm (last visited June 2, 2006). CAFRA comprised a series of reforms to strengthen the rights of the owners of seized property, including a deadline for the Government to act on claims made by an interested party in response to notice of an intended forfeiture. CAFRA was codified at 18 U.S.C. § 983, and provides in relevant part:

[ (a) ](2) (A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.

(B) A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure.

(3) (A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the

---

**3.** The claim forms themselves are signed by Paulette Martin and dated February 17, 2005, *see* Def.'s Hearing Exh. 2; the letter to the Port of Baltimore withdrawing the remaining offers in compromise is dated February 22, 2005. The disparity is not important.

manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

(B) If the Government does not—

(i) file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or

before the time for filing a complaint has expired—

(I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; and

(II) take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,

the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.

(C) In lieu of, or in addition to, filing a civil forfeiture complaint, the Government may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.

18 U.S.C. § 983.

This case presents two questions concerning the statutory text above. First, did Martin timely file a claim under § 983(a)(2)(B)? And second, if yes (or in the alternative), does § 983(a)(3)(B) impose a deadline on the Government that it failed to meet on the facts of this case?

B

The first question was raised by neither party, but it nevertheless appears to be dispositive. Section 983(a)(2)(B) gave Martin until the deadline set forth in her personal notice letter (in compliance with the statute): 35 days from July 14, 2004. Martin made her offers in compromise within that time, on July 30, 2004, *see* Mot. Exh. 2, but she did not make a "claim" within the meaning of the statute until February, 2005, long after the deadline in the notice letter. *See, e.g.,* Mot. Exh. 5 ("[Martin] is terminating the offer in compromise process and filing claims for each item of property seized."); *see also* Mot. Exh. 1 (advising Martin that she "may file an offer in compromise" (option 2) or "may choose to file a claim" (option 6)).

The difference between an "offer in compromise" and a "claim" is more than linguistic. A "claim," under 18 U.S.C. § 983(a)(2)(A), requests the initiation of a civil forfeiture proceeding in district court; an offer in compromise is merely a request that the Government agree to keep less than the full value of property in exchange for avoiding the expenses of defending a challenge to the forfeiture (either administratively or in court) and the risks that the challenge will be successful. Section 983(a)(2)(A) gives an opportunity to "file a claim" to "a person claiming property in a *nonjudicial* civil forfeiture proceeding" (emphasis added)—in other words, it gives someone who (like Martin in July 2004) is being threatened with nonjudicial administrative forfeiture the opportunity to proceed judicially instead. Among other effects, filing a claim imposes a deadline on the Government for proceeding with a civil forfeiture action, dating from when "a claim has been filed." § 983(a)(3)(A). If the aggrieved property owner never requests such a forfeiture action, she has never made a claim at all.

■ Tellingly, Martin does not attempt to argue that her claim dates to the filing of her offers in compromise in July 2004; rather, her argument is that the Government's CAFRA time limit began to run when she filed the claim in February 2005, more than seven months after the date of the notice letter. Such an argument is contrary to the plain language of CAFRA, and would turn 18 U.S.C. § 983(a)(2)(B) into surplusage: it would effectively remove any deadline for the filing of a claim, and so long as some kind of administrative proceeding is underway, a person who is dissatisfied with the process could go ahead and file a claim, no matter how long ago she received a personal notice letter or what deadline that letter imposed. Moreover, such a construction would mean that at a claimant's convenience, she could impose a time limit on the Government to file a civil forfeiture complaint, an odd result that this Court is hesitant to assume Congress intended.

The offer in compromise statutes are not to the contrary. Title 19, section 1617—which authorizes offers in compromise in this as in other contexts involving Customs—specifically authorizes the settlement of claims "[u]pon a report by a customs officer [or] United States Attorney," not just by the customs officer whose involvement ends when a judicial forfeiture proceeding begins. There is nothing in the statute that suggests that an offer in compromise cannot be considered after a claim has been filed or even in parallel with a court proceeding; a civil forfeiture action leaves the parties free to settle. By checking Box # 1 on CAFRA Form AF-PUBLISH, Mot. Exh. 1, however, Martin explicitly "request[ed] that [Customs] ... consider [her] petition or offer administratively" rather than through a court proceeding. Checking Box # 3 and "request[ing] that [Customs] send [her] case

for court action" would have changed the government agency responsible for considering an offer in compromise and the procedure to be followed if the offer failed, but would not have foreclosed settlement.[4]

It is unfortunate that the form letters sent by Customs appear to give claimants an exclusive choice between attempting an offer in compromise and maintaining their rights under CAFRA. It is still more unfortunate that, though sent by non-lawyers to people who could not in any case be their legal clients, they purport to give legal advice. *See* Mot. Exh. 1 ("Your legal options are as follows."). The statute is clear, however; the time limit for the filing of a "claim" under CAFRA is set in a personal notice letter, or else is 30 days from the final publication of a notice of seizure. Customs lacks statutory authority to extend these time limits after it has set a deadline in a personal notice letter.

■ Finally, although Customs' forms and communications may have been misleading, they cannot trump the mandate of the statute and give rise to an estoppel or equitable tolling argument. Martin was represented by competent counsel, and, through that counsel, explicitly refused an opportunity to initiate judicial forfeiture proceedings. She did not "file[ ] a defective pleading within the statutory period," nor was she "induced or tricked by h[er] adversary's misconduct into allowing the filing deadline to pass." *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

Accordingly, Martin's failure to timely file a claim is a sufficient basis for denying her motions.

## C

■ Even if Martin's claim had been timely, however, the Government fulfilled its obligations under CAFRA. In this

---

4. Indeed, the issuance of this opinion was delayed to let the parties try to settle.

case, the Government did not proceed with civil forfeiture under § 983; rather, it included all of the property in the Fourth Superseding Indictment and is proceeding with criminal forfeiture under 21 U.S.C. § 853 and 18 U.S.C. § 982. Accordingly, under 18 U.S.C. § 983(a)(3)(C), "the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute," not CAFRA.

At first glance, 18 U.S.C. § 983(a)(3)(B) would appear to require the Government to return Martin's property for failure to comply with the CAFRA time limit. The Government did not "file a [civil] complaint for forfeiture" nor "return the property" within 90 days of the filing of Martin's claim. *See* § 983(a)(3)(B)(i). Accordingly, it was bound by the time limit in § 983(a)(3)(B)(ii): before "the time for filing a complaint has expired," it was required to "obtain a criminal indictment containing an allegation that the property is subject to forfeiture" (which it had already done) and to "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute" (which, Martin argues, it failed to even attempt until it acquired the criminal seizure warrants on July 25, 2005, after Martin filed the motion at issue here). Because it did not get the criminal forfeiture warrants in time, the argument goes, the Government "shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." § 983(a)(3)(B).

The flaw in this argument is that § 983(a)(3)(B) and § 983(a)(3)(C) must be read in concert. Section § 983(a)(3)(B) does bar the Government from effecting a civil forfeiture of Martin's property; the Government has missed its deadline under CAFRA to do so. § 983(a)(3)(B)(i). However, the directive that the Government "shall promptly release the property" assumes that the Government has not "take[n] the steps necessary to preserve its right to maintain custody of the property" under the criminal forfeiture statutes. *See* § 983(a)(3)(B)(ii)(II). The upshot of § 983(a)(3)(B) is that if the Government misses its CAFRA deadline and has not taken steps under another statutory scheme to maintain custody of the property, § 983(a)(3)(B) directs it to release the property "promptly." If, on the other hand, it does eventually "take the steps necessary" to maintain the property for criminal forfeiture, § 983(a)(3)(C) applies, without any restriction on when those other steps are taken. That is the situation here. Because "criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute." § 983(a)(3)(C). In other words, although CAFRA's time limit prevents CAFRA from serving as a source of authority for the Government to hold the property further, CAFRA does not stand in the way when a different statutory scheme provides an independent basis for holding the property after the CAFRA time limits have elapsed.

Two observations support this interpretation of § 983(a)(3)(B) and (a)(3)(C). First, if § 983(a)(3)(B) required the Government to return property whenever it misses its CAFRA deadline, the second sentence of § 983(a)(3)(C)[5] would be sur-

---

**5.** "If criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued posses-sion of the property shall be governed by the applicable criminal forfeiture statute." 18 U.S.C. § 983(a)(3)(C).

plusage; the Government's right to continued possession of the property would be governed not by the applicable criminal forfeiture statute, as § 983(a)(3)(C) indicates, but by CAFRA itself, and this would be true whether or not the Government ever initiated criminal forfeiture proceedings. If it initiated criminal forfeiture proceedings and complied with the criminal forfeiture statutes within the CAFRA time limit, then by virtue of § 983(a)(3)(B)(ii), the civil forfeiture warrants would also remain valid. If, on the other hand, it failed to do so, then no warrants would remain valid. Either way, Government's right to continued possession of the property would rise or fall with the validity of the civil forfeiture warrant, and the second sentence of § 983(a)(3)(C) would accomplish nothing.

Second, if this Court were to adopt Martin's interpretation, then at least as to the property that was seized pursuant to search and/or arrest warrants, the Government would be worse off having initiated civil forfeiture proceedings than if it had simply done nothing. If it had done nothing, indicted the property, and belatedly acquired a criminal seizure warrant, that warrant would remain valid; but because it initiated and then dropped civil forfeiture proceedings, the CAFRA time limit would bar criminal forfeiture proceedings as well. One purpose of CAFRA was to encourage expeditious judicial resolution of forfeiture disputes; as a matter of policy, it is unlikely that Congress intended to discourage the use of the civil forfeiture system by imposing its new deadlines on all proceedings where the civil forfeiture system has ever been invoked.

Even under the Court's interpretation, however, there remains a seeming anomaly in this case. For a brief period, from the filing of Martin's claim (still assuming *arguendo* that the claim was timely) until the Government got the criminal seizure warrants, CAFRA required the property's return, and no other warrant authorized its detention. Only by getting the criminal warrants did the Government cure the problem; for a time, then, the Government lacked authority to retain the property. This anomaly is largely theoretical, however. The criminal forfeiture statutes do not include a time limit; even if this Court required that the property be released today, the Government could turn right around, get a new criminal forfeiture warrant, and proceed with criminal forfeiture under the Fourth (or Fifth[6]) Superseding Indictment. In effect, it did so in anticipation of this opinion. Thus, whatever the status of Martin's property when she filed the instant motion for its return, the Government's continued detention of the property became legal when it realized (thanks, probably, to Martin's motion) that it needed to take further action and obtained the criminal warrants. The legality of the detention prior to that point is, as the Government argues, moot.

These results make sense in light of the purposes of CAFRA. CAFRA was intended to provide additional protections to persons whose property was subject to civil forfeiture; Congress was concerned because "[c]ivil forfeiture provides far fewer protections to property owners than criminal forfeiture, which requires a criminal conviction of the property owner." SENATE JUD. COMM., STAFF REPORT ON S.1931, *supra*. Where, as here, the Government elects to proceed with criminal forfeiture instead of civil forfeiture, § 983(a)(3)(C) tells us that CAFRA's protections are unnecessary and do not apply.

---

**6.** In anticipation of Martin's criminal trial, set to begin on June 6, 2006, the Government issued another superseding indictment on April 12, 2006. Paper No. 794. It does not differ relevantly from the Fourth Superseding Indictment.

## III

■ Martin's motion for return of her property raises two additional arguments that must be addressed. First, Martin argues that even when the Government finally obtained criminal warrants, those warrants were deficient because the *criminal* forfeiture statute the Government relied on, 21 U.S.C. § 853(f),[7] permits a criminal seizure warrant to issue only if "there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture *and* that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture." 21 U.S.C. § 853(f) (emphasis added). Section 853(e), in turn, authorizes protective orders and injunctions to protect potentially forfeitable property. Here, Martin argues, there was no adequate showing that a protective order would not suffice, so the warrants under § 853(f) are invalid.

The affidavits submitted in conjunction with the application for criminal forfeiture warrants, however, undermine this argument. The affiant, Customs Task Force Officer Thomas Eveler, affirmed that based on his training and experience, a restraining order would be insufficient to assure the availability of the property. Opp. Exh. A, Eveler Aff., at 15. This Court assumes that the magistrate judge who issued the warrant relied on this affirmation. Given the fungible and readily transferable nature of the property (mostly cash) and the size and seriousness of this alleged conspiracy (which includes large sums of money exchanged among dozens of defendants in multiple jurisdictions), this Court cannot conclude that there was no probable cause to believe that a seizure warrant was necessary to secure the property for trial. *See also*

*United States v. Oloyede,* 982 F.2d 133, 138 (4th Cir.1992) ("[A] determination of probable cause by a neutral and detached magistrate judge is entitled to substantial deference."). The authority Martin cites, *In re 2000 White Mercedes ML 320–Five–Door SUV,* 174 F.Supp.2d 1268, 1270–72 (M.D.Fla.2001), is not to the contrary, because it involved the affirmance of a magistrate judge's decision, on different facts, that no showing of probable cause had been made.

Martin's second argument as to why the criminal seizure warrants are deficient is that Martin's property is being seized as substitute assets for the proceeds of her alleged illegal activities, and that "other than the Fourth Circuit, every circuit which has addressed this issue ... has concluded that the Government lacks statutory authority to freeze such [substitute] assets prior to trial." Mot. at 16. Unfortunately for Martin, we are in the Fourth Circuit. As she concedes, under Fourth Circuit precedent, substitute assets are subject to pretrial seizure. *See In re Billman,* 915 F.2d 916, 917 (4th Cir.1990). Even if this Court had the freedom to entertain an argument that pretrial detention of substitute is impermissible, however, substitution is only one ground that the Government has proffered for the seizure of the assets in this case. As described in the Eveler Affidavit, Opp. Exhs. A, B, there is also probable cause to believe that the property represented the proceeds of Martin's illicit drug transactions and that the bank accounts were used to pay premiums on life insurance policies that were obtained through wire and mail fraud.

Accordingly, the Government now holds the seized property pursuant to a valid warrant, and it may continue to do so

---

7. 21 U.S.C. § 853 is a forfeiture statute pertaining to drug crimes. However, its procedural requirements are adopted by reference in 18 U.S.C. § 982(b)(1), so it applies even to the extent Martin's property is subject to forfeiture for non-drug offenses.

pending trial and criminal forfeiture proceedings.

## IV

For the foregoing reasons, Defendant Paulette Martin's motion for return of her property under Fed.R.Crim.P. 41(g), Paper No. 578, will be denied by separate order.

Because this Court concludes that neither CAFRA nor the criminal forfeiture statutes provide Martin with a viable argument that her property is being held illegally, those same statutes provide no basis for an argument that the use or mention of that property at trial should be suppressed. Accordingly, Martin's motion to suppress, Paper No. 833, will also be denied by separate order.

## ORDER

Upon consideration of Defendant Paulette Martin's Motion for Hearing and Prompt Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) [Paper No. 578], the opposition and reply thereto, and for the reasons stated in the accompanying memorandum opinion, it is this 6th day of June, 2006, by the United States District Court for the District of Maryland,

**ORDERED,** that Defendant Paulette Martin's Motion for Hearing and Prompt Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g) [Paper No. 578] is **DENIED;** and it is further

**ORDERED,** that Defendant Paulette Martin's Motion to Suppress Evidence Subject to Prior Return to Defendant [Paper No. 833] is **DENIED.**