## In re FUNDS ON DEPOSIT.

Case Nos. 12–mj–3041A–KPN, 12–mj–3041F–KPN, 12–mj–3041G–KPN, 12–mj–3041H–KPN, 12–mj–3041I–KPN, 12–mj–3041P–KPN.

United States District Court,
D. Massachusetts.

Sept. 24, 2012.

*MEMORANDUM AND ORDER RE-
GARDING MOVANTS' MOTION TO
AMEND AND SUPPLEMENT
EMERGENCY MOTION FOR RE-
TURN OF PROPERTY (Document
No. 98) and MOVANTS' MOTION
TO AMEND THEIR MOTION TO
AMEND AND SUPPLEMENT
EMERGENCY MOTION FOR RE-
TURN OF PROPERTY (Document
No. 99)* [1]

NEIMAN, United States Magistrate Judge.

Presently before the court are Movants' Motion to Amend and Supplement Emer-gency Motion for Return of Property (No. 98) and Movants' Motion to Amend their Motion to Amend and Supplement Emer-gency Motion for Return of Property (No. 99). Movants and the Government have stipulated that Movants' Emergency Mo-tion for Return of Property (No. 66) no longer represents an emergency. The parties have also agreed to wait until the Government's forthcoming forfeiture ac-tion to address the underlying challenges to the seizures, subject, however, to the court's resolution of whether the Govern-ment violated the requirement in 18 U.S.C. § 983(a)(1)(A)(i) that notice be provided within sixty days of the seizures ("the 60–day requirement"). The court is now poised to answer that question in the nega-tive.

## I.  *Factual and Procedural Background*

On May 31, 2012, the Government ob-tained warrants from this court to seize funds in various bank accounts and prop-erty in connection with an investigation regarding alleged evasion of taxes and money laundering by Movants and related individuals. On June 5, 2012, the Govern-ment executed the warrants and seized the funds and property identified therein. Shortly thereafter, the Government agreed to return a portion of the seized funds so that Movants' principal could pay certain payroll obligations. On June 18, 2012, Movants filed an Emergency Motion for Return of Property pursuant to Fed. R.Crim.Pro. 41. Movants argued, in par-ticular, that the seizures were illegal, that the seizures jeopardized certain of Mov-ants' business operations, that the admin-

1. This memorandum and order is a redacted version of the marginally lengthier memoran-dum and order previously issued by the court and under seal. The court notes a paucity of available rulings addressing the situation pre-sented here and has decided to publish this memorandum and order in this somewhat redacted form to foster further development of this area of the law.

istrative process under 18 U.S.C. § 983 provided an inadequate remedy and, therefore, that an emergency hearing regarding the legality of the seizures was necessary.

On July 2, 2012, the Government filed its Opposition to Movants' Emergency Motion. It argued that the seizures were lawful in that they complied with the Fourth Amendment, that 18 U.S.C. 983(f) provided an adequate remedy at law and, accordingly, that a hearing pursuant to Rule 41 was not appropriate, and that Movants had not demonstrated hardship under 18 U.S.C. § 983(f) which would entitle them to a return of the property. The court held a hearing on July 30, 2012, during which the parties discussed the possibility of returning some additional funds to Movants' principal, in exchange for security in real property, so as to enable him to operate the certain businesses.

On August 7, 2012, Movants filed a Motion to Amend their Emergency Motion for Return of Property (Document No. 98) seeking the return of additional funds and property. Movants also argued therein that the Government violated 18 U.S.C. § 983(a)(1)(A)(i) by failing to provide notice of the seizures within sixty days and, accordingly, that the Government was required to return all of the seized property. On August 9, 2012, Movants filed another Motion to Amend (Document No. 99) which sought to include requests for the return of yet other seized funds. The Government filed an Opposition on August 21, 2012, in which it argued that the 60-

day requirement does not apply in this case. Subsequently, Movants filed a Reply and the Government filed a Sur–Reply.

On August 30, 2012, Movants filed a Status Report informing the court that the parties had reached an agreement under which the Government would return another $115,000 of the seized funds for the operation of certain of Movants' businesses in exchange for security in real property. The Status Report also requested that the court hold all motions—except the Motion to Amend and Supplement Emergency Motion for Return of Property and the Motion to Amend their Motion to Amend and Supplement Emergency Motion for Return of Property (Document Nos. 98 and 99)—"in abeyance pending the anticipated filing of judicial forfeiture actions on or before October 1, 2012." The Status Report stated, however, that Movants still wanted the court to rule on the 60–day requirement issue.[2]

On August 31, 2012, the court entered an electronic order granting Movants' Motion to Amend their Emergency Motion and Movants' Motion to Amend their Motion to Amend (Document Nos. 98 and 99) to the extent they sought to amend their prior emergency motions for the return of property (Document Nos. 66 and 69); further, as discussed in a subsequent telephone conference with counsel, the court took under advisement the 60–day requirement issue. The court also entered an electronic order acknowledging the parties' agreement, as set forth in the Stipulation, that Movants' Emergency Motion for Re-

**2.** The parties' Stipulation, which was attached as an exhibit to the United States' Motion to Unseal, provided that "this Stipulation resolves the alleged emergency nature of the emergency Motion ..." and that Movants "agree[ ] to lodge any future challenges to the seizures and forfeiture of the Disputed Funds in a forthcoming forfeiture proceeding that

the government anticipates filing. Should the United States fail to obtain the return of a criminal indictment naming the Disputed Funds or fail to file a civil forfeiture complaint against the Disputed Funds by October 1, 2012, [Movants' principal] reserves the right to move the Court to lift the stay of Emergency Motion." (Document No. 102.)

turn of Property no longer represented an emergency.

## II. *Discussion*

■ Movants argue that, because sixty days have passed since the seizures and no written notice has been sent to interested parties, the Government has violated 18 U.S.C. § 983(a)(1)(A)(i) and must return the seized property. In response, the Government argues that the 60–day requirement does not apply in this case because it is not pursuing an administrative (nonjudicial) forfeiture proceeding and, as described, intends to file a civil forfeiture complaint by October 1, 2012. *See* 18 U.S.C. § 983(a)(1)(A)(i) ("[I]n any *nonjudicial* civil forfeiture proceeding ...." (emphasis added)). The Government also argues that the 60–day requirement in section 983(a)(1)(A)(i) does not apply here since it cannot pursue an administrative forfeiture because the assets are worth more than $500,000 and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is not authorized to administratively forfeit such assets. In turn, Movants argue that the Government cannot simply announce its intent to pursue judicial forfeiture in the future and avoid the 60–day requirement; rather, as demonstrated by the statute as a whole, Movants assert, the Government has sixty days from the seizure to choose either administrative or civil judicial forfeiture.

### A. *Statutory Framework*

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983 *et seq.*, was enacted, in part, "to curb what Congress perceived as abuses of the existing civil forfeiture system." *United States v. Martin,* 460 F.Supp.2d 669, 672 (D.Md. 2006). The history and purpose of CAFRA are best set forth in a journal article written by Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Ex-*

*panded Government Forfeiture Authority and Strict Deadlines Imposes on All Parties,* 27 J. Legis. 97 (2001). Prior to CAFRA, the article explains, "there was no general-purpose statutory requirement that the government commence a civil forfeiture action-either administrative or judicial-within any specific period of time following the seizure of property." *Id.* at 121. Most of the civil forfeiture statutes provided only vague statements that the forfeiture proceedings must be commenced "forthwith," "without delay," or "promptly." *Id.* at 121–22. "In the absence of any statutory deadlines for the commencement of administrative or civil judicial forfeiture proceedings, the courts ruled that the only protection a property owner had against government delay was the Due Process Clause of the Fifth Amendment, as applied by the Supreme Court in *United States v. $8,850 in Currency* [461 U.S. 555, 564–65, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) ]. Generally, in those cases, the courts declined to find any due process violation despite delays of as much as 2 years in the filing of a judicial complaint." Cassella, *supra,* at 123. On the other hand, there were strict deadlines for those attempting to challenge administrative or judicial forfeiture actions. *See id.* In essence, "[t]he enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well." *Id.* at 125. In short, CAFRA overrides contrary provisions of then-existing law and summarizes the three alternatives which the Government can pursue—an administrative forfeiture proceeding, a judicial forfeiture

action, or a forfeiture related to a criminal indictment.[3]

As to *administrative* forfeiture proceedings, notice of such proceedings, pursuant to section 983(a)(1), "must, in general, be sent to interested persons within sixty days of the seizure of the property. Under § 983(a)(2), property owners, in turn, have thirty days from last date of publication to file a claim.... If a claim is filed, the United States Attorney has ninety days under § 983(a)(3) to file a civil judicial action (or to include the forfeiture in a related criminal indictment)." *Id.*

The question here is whether—in light of the phrase "in any nonjudicial forfeiture proceeding"—the 60–day requirement for written notice applies when the Government does *not* intend (or, as further explained below, does not have the power) to pursue an administrative forfeiture. The Government contends that the 60–day requirement does not apply in such situations. Rather, the Government argues, it need only file a civil *judicial* forfeiture complaint if the owner whose property has been seized files his or her own claim and then only within ninety days of that claim. *See* 18 U.S.C. § 983(a)(3). Movants have not filed such a claim, the Government asserts, so its obligation to file a civil forfeiture complaint has not been triggered. That said, the Government recognizes that Movants' claim can only be filed in response to a written notice of an administrative forfeiture proceeding, *see* 18 U.S.C. § 983(a)(2), which notice, so the Government argues, was not required.

---

3. Specifically, 18 U.S.C. § 983(a)(1) provides as follows:

(i) Except as provided in clauses (ii) through (v), in any nonjudicial forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of seizure.

(ii) No notice is required if, before the 60–day period expires, the Government files a civil judicial forfeiture action against the property and provides notice of that action as required by law.

(iii) If, before the 60–day period expires, the Government does not file a civil judicial forfeiture action, but does obtain a criminal indictment containing an allegation that the property is subject to forfeiture, the Government shall either—

(I) send notice within the 60 days and continue the nonjudicial civil forfeiture proceeding under this section; or

(II) terminate the nonjudicial civil forfeiture proceeding, and take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute.

Section 983(a)(1) also provides as follows:

(F) If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

Section 983(a)(2), in turn, provides as follows:

(A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a forfeiture statute may file a claim with the appropriate official after the seizure.

(B) A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure.

Continuing, section 983(a)(3) provides:

(A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint....

In sharp contrast, Movants argue that, read as a whole, the statute requires the Government to provide written notice of a forfeiture proceeding (nonjudicial or judicial) within sixty days of the seizure or, alternatively, obtain a criminal indictment within that time period. If the Government fails to do so, Movants assert, it must return the seized property, unless that property is contraband which the person from whom it has been seized may not legally possess. *See* 18 U.S.C. § 983(a)(1)(F).

Movants' argument is certainly consistent with what appears to be the overall purpose of CAFRA, *i.e.,* to create deadlines with which the Government, too, must comply. But, unfortunately for Movants' cause, the plain language of the statute itself supports the Government's more limited interpretation. As set forth in section 983(a)(1)(A)(i), the 60–day requirement only applies in a "nonjudicial," *i.e.,* an administrative forfeiture proceeding. If Congress wanted the 60–day requirement to apply to both administrative and judicial forfeiture proceedings, it would not have included the phrase "in any *nonjudicial* forfeiture proceeding," or it would have otherwise made its intent clear. *See Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 8 (1st Cir.2007) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says." (quoting *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 461–62, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002))). Therefore, the 60–day requirement does not apply here because, as the Government contends, it is not pursuing an administrative forfeiture.

█ It must be understood that " '[a]dministrative forfeiture is a device that permits the United States to . . . take ownership [of property in its custody] without the trouble and expense of court proceedings.' . . . It is 'conducted wholly outside the judicial system' and consists of no more than notice by the Government that it intends to forfeit the property, followed by default on the part of the party whose property has been seized." *Rangolan v. Dep't of Homeland Security,* 2010 WL 908754, at *1 n. 2 (D.D.C.2010). An administrative forfeiture proceeding is commenced either when the Government sends individual notice to interested persons, *id.; Langbord v. U.S. Dep't of Treasury,* 645 F.Supp.2d 381, 388 (E.D.Pa.2009), or when public notice of the seizure is published for three weeks, *Bermudez v. City of New York Police Dep't,* 2008 WL 3397919, at *3 (S.D.N.Y.2008). The notice entitles the interested person to file a claim by a deadline set forth in the letter notice ("which deadline may not be earlier than 35 days after the date the letter is mail"). 18 U.S.C. § 983(a)(2)(A) and (B). The interested person's claim, in turn, triggers a ninety day period within which the Government must file a civil judicial forfeiture proceeding. 18 U.S.C. § 983(a)(3)(A). However, because the Government here had no intention to commence and has not commenced an administrative forfeiture proceeding (but rather intends to file a *judicial* forfeiture action), it was not required to send notice of the seizure within sixty days. It is difficult to read the statutory scheme in any other way.

The Government also argues that, even if it wanted to pursue an administrative forfeiture here (within the sixty day notice period), it would be prohibited from doing so. The court agrees. Pursuant to 19 U.S.C. § 1607(a)(1), property may not be administratively forfeited if it exceeds $500,000 in value. To be sure, Movants argue that the $500,000 limit does not apply because the Government cannot aggregate the separate accounts at issue here for purposes of exceeding that limit. The court, however, is not persuaded. As the

Government argues, all accounts here can be traced to one principal of intertwined entities. *See DWB Holding Co. v. United States*, 593 F.Supp.2d 1271, 1272 (M.D.Fla. 2009) (Government cannot pursue administrative forfeiture regarding amounts in excess of $500,000 even though one of the accounts contained less than that amount). As the court explained:

> Although Plaintiff is correct that written notice is required within sixty (60) days after the date of seizure where there is a nonjudicial civil forfeiture proceeding, 18 U.S.C. § 983(a)(1)(A)(i), Plaintiff is incorrect that such notice is required in this instance because the United States has not commenced nonjudicial forfeiture proceedings. Nonjudicial proceedings are administrative. The amount seized is over $500,000, the threshold for giving notice contemplated in administrative proceedings of 18 U.S.C. § 983. 19 U.S.C. § 1607. Thus, because the amount seized exceeds $500,000, the

Drug Enforcement Agency ("DEA") cannot initiate administrative proceedings against the funds and is therefore not required to give notice. *Id.*

Persevering, Movants also argue that the $500,000 limit does not apply to their situation because the statute exempts currency and monetary instruments. *See* 19 U.S.C. § 1607(a)(4). As the Government explains, however, it did not seize currency or monetary instruments; rather, it seized funds in bank accounts, which does not fall within the exemption. *See* 31 U.S.C. § 5312(a)(3) (defining "monetary instruments" as coins, currency, travelers' checks, notes, and similar items). In short, it is clear that the Government is

prohibited from pursuing administrative forfeiture under 19 U.S.C. § 1607(a)(1).[4]

The Government's overall argument that the 60–day requirement does not apply here is not only consistent with *DWB Holding Co.*, but other cases as well. *See Chaim v. United States*, 692 F.Supp.2d 461, 466 (D.N.J.2010) (CAFRA's notice requirement does not apply because the Government is not pursuing "nonjudicial civil forfeiture"); *Langbord*, 645 F.Supp.2d at 388–89 ("[T]he Government never began an administrative forfeiture proceeding and therefore the requirements of § 983(a) do not apply."); *United States v. 1866.75 Board Feet and 11 Doors and Casings*, 587 F.Supp.2d 740, 751–52 (E.D.Va.2008) (sections 983(a)(1)(i) and 983(a)(3) do not apply to judicial forfeitures); *United States v. $147,900.00 in U.S. Currency*, 2009 WL 903356, at *4 (M.D.N.C.2009) ("[B]y its terms, § 983(a)(1) establishes procedures and deadlines for notice that apply only to nonjudicial civil forfeiture proceedings."), *vacated in part on other grounds*, 450 Fed.Appx. 261 (4th Cir.2011).

A contrary reading of § 983(a)(1)(A)(i) would require the court to ignore the phrase "in any nonjudicial forfeiture proceeding." *See Herman v. Hector I. Nieves Transport, Inc.*, 244 F.3d 32, 36 (1st Cir.2001) ("A primary canon of statutory construction is that a statute should be construed so as not to render any of its phrases superfluous."). Although the Government's position has the effect of exempting it from one aspect of CAFRA's notice requirements, this does not mean that there is no time limitation within which the Government must file a forfeiture action following a seizure. It simply

---

4. The Government also argues that, although ATF—"the lead investigative agency in this matter"—is authorized to administratively forfeit property related to contraband cigarettes and smokeless tobacco, it is not authorized to administratively forfeit property related to contraband cigars. See 28 CFR § 0.130. Given its other analyses, the court does not delve into this particular argument.

means that the pre-CAFRA due process limitations would apply in this situation. *See United States v. $8,850 in U.S. Currency*, 461 U.S. at 564–65, 103 S.Ct. 2005 (court to weigh length of delay, reason for delay, claimant's assertion of his right, and prejudice to claimant). Movants, however, have not pursued this due process argument and, in any case, the Government has represented repeatedly that it will file a forfeiture action by October 1, 2012, the timing of which would not appear to run afoul of Movants' constitutional rights. *See id.* at 568, 103 S.Ct. 2005 (eighteen-month delay did not violate due process).

This is not to say that Movants' motion is entirely without merit. Reading section 983 as a whole, it could be argued, impliedly, that the Government, within sixty days of a seizure, should either bring a judicial forfeiture action or have the forfeiture proceeding deemed to be administrative. As argued by Movants, this interpretation is especially apparent in section 983(a)(1)(A)(ii), which states that "[n]o notice is required if, before the 60–day period expires, the Government files a civil judicial forfeiture action against the property and provides notice of that action as required by law." In addition, as described, the Government's reading of the statute could delay, if not foreclose, a property owner from filing a clam under section 983(a)(2)(A), which presupposes that the owner has received a written notice of the nonjudicial forfeiture proceeding. According to the Government's reading of the statute, no such notice would be sent if the Government, as here, had decided not to or was precluded from initiating an administrative forfeiture proceeding.

Movants, however, offer little support for their interpretation of the statutory language. First, the plain statutory language cannot easily be forced into the box which Movants offer. Second, Movants'

reliance on a single sentence from *United States v. Miscellaneous Firearms, Explosives, Destructive Devices, Ammunition*, 399 F.Supp.2d 881, 882 (C.D.Ill.2005) ("[p]ursuant to CAFRA, the Government must commence either a non-judicial forfeiture (administrative) or a judicial forfeiture within 60 days after the seizure of the property)," is, upon close examination, unhelpful. As the Government points out, the court there held that the seizure at issue predated CAFRA's effective date, making the quotation pure *dicta*.

Granted, there is one case, although not cited by Movants, that provides more direct support for Movants' argument, *Return of Seized Property v. U.S.*, 625 F.Supp.2d 949 (C.D.Cal.2009). There, the Government similarly argued that the 60–day requirement did not apply because it did not initiate a "nonjudicial civil forfeiture proceeding." *Id.* at 953. The court, however, rejected the argument, explaining that "courts have observed that this provision generally requires notice to be given within sixty (60) days of any seizure by the Government." *Id.* at 953–54. However, the cases relied upon in support of this assertion are inapposite. In three out of the four cases, the Government had sent notice of its intent to forfeit the property and, thus, was already pursuing administrative forfeiture. In the fourth case, *Miscellaneous Firearms, Explosives, Destructive Devices, Ammunition*, the court, as mentioned, concluded that CAFRA did not apply.

■ Perhaps the most interesting support for Movants' position, ironic though that may be, comes from the Department of Justice itself, namely, its recognition that the argument advanced by the Government (in this case and presumably others) is somewhat inequitable insofar as it acknowledges a hole in the statutory scheme discussed above. In its Asset For-

feiture Policy Manual, the Department of Justice states that "Congress clearly was concerned with the absence of a mechanism to force the Government to give a potential claimant timely access to the courts once his property was seized" and that "the Government should not be free to ignore indefinitely a request made by a potential claimant for the release of his property or for the commencement of formal judicial proceedings." Dep't of Just. Manual Comment. 9–119.000A, at 9–8133, 9–8135. Nevertheless, the Manual suggests that, in drafting CAFRA as it did, Congress mistakenly "did not consider ... that not all forfeiture cases begin as administrative forfeitures." *Id.* at 9–8133. Again, administrative forfeiture is the starting point for all the other deadlines set forth in the statute. As a result, aside from due process limitations, there is no deadline in the statute for commencing a judicial forfeiture proceeding when the Government chooses not to pursue administrative forfeiture or is prohibited from doing so. *See id.*

To remedy the situation, at least in part, the Manual suggests that the Government should commence a judicial forfeiture action within ninety days of receiving a request for release of property from a potential claimant even when administrative forfeiture is not pursued and is not available. It provides that, "in a case where the U.S. Attorney receives such a request in writing, the prosecutor should treat the request as if it were a 'claim' referred to in section 983(a)(3)(A), and should thus commence a judicial forfeiture action within 90 days of the receipt of the request." *Id.* at 98135. Although this policy is a "should" and not a "must," it does lend some credence to Movants' argument that, in light of CAFRA's overall purpose, a time limit for notice should apply.[5]

In sum, although the Government's reading of 18 U.S.C. § 983(a)(1)(A)(i) seemingly creates a hole inconsistent with the apparent purpose of CAFRA, namely, to provide timely notice of forfeiture no matter what the mechanism, the remedy is a legislative amendment, not judicial fiat.[6] Until that occurs, the court concludes, the Government's reading of the plain lan-

---

5. This policy likely explains why the Government has offered to commence a judicial forfeiture action by October 1, 2012. That date, however, is 90 days from the filing of the Government's Opposition to Movants' Emergency Motion, filed on July 2, 2012, and not 90 days from Movants' Emergency Motion for Return of Property, filed on June 18, 2012, which arguably should be considered Movants "claim" under the Department of Justice policy.

6. While changes to the forfeiture procedures were under consideration, one bill included language to the effect that, "[i]f the Attorney General determines that a forfeiture action should be instituted, he or she shall institute such action *as soon as practicable,* taking into account the status of any criminal investigation to which the forfeiture action may be related." Forfeiture Act of 1997, H.R. 1745, 105th Cong. § 201(a) (1997) (emphasis added). This language never made it into law.

Still, Congress may well have believed that it had filled in any gaps in the statutory scheme. As described in a House Report to a subsequent version of the bill containing language similar to that which was ultimately enacted, the new statute was thought to create a 90–day–time limit on the filing of the complaint in cases where the Government "has seized or restrained the property subject to forfeiture." H.R.Rep. No. 105–358, Part 1, at 44 (1997). But the 90-day language set forth in the final statute only begins to run when the property owner makes a claim, *see* 18 U.S.C. § 983(a)(3)(A), which claim is only triggered when notice of an administrative forfeiture action is sent to and received by the property owner. As explained, that, in turn, only occurs when an administrative forfeiture proceeding, not a judicial forfeiture proceeding, is commenced. It is probably for this reason that the Justice Department Manual sets forth the policy described above.

guage of the statute as it presently stands is correct. *See DWB Holding Co.,* 593 F.Supp.2d at 1272; *Chaim,* 692 F.Supp.2d at 466; *Langbord,* 645 F.Supp.2d at 388–89; *1866.75 Board Feet and 11 Doors and Casings,* 587 F.Supp.2d at 751–52; *$147,900.00 in U.S. Currency,* 2009 WL 903356, at *4 (M.D.N.C.2009).

### III. *Conclusion*

For the reasons stated, Movants' motions are DENIED insofar as they seek the return of the seized property because of the Government's alleged failure to comply with 18 U.S.C. § 983(a)(1)(A)(i).

IT IS SO ORDERED.